**FRAN CORP., Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 98–6093.

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1998.

Decided Jan. 21, 1999.

Thomas A. Condon, Birbrower, Montalbano, Condon & Frank, P.C., New City, New York, for Plaintiff–Appellant.

Sarah Thomas and Gideon A. Schor, United States Department of Justice, United States Attorney for the Southern District of New York, for Defendant–Appellee.

Before: OAKES and WALKER, Circuit Judges, and COTE, District Judge.*

* The Honorable Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

COTE, District Judge:

Plaintiff–Appellant Fran Corp. ("Fran" or "Taxpayer") appeals from a March 2, 1998 judgment entered in the United States District Court for the Southern District of New York (Charles L. Brieant, *District Judge*), granting the United States' motion for summary judgment and denying plaintiff's cross-motion for summary judgment in its action seeking a refund of tax penalties. Plaintiff argued below, and now urges on appeal, that it had "reasonable cause" for its late payment and deposit of employment taxes under 26 U.S.C. §§ 6651(a)(2) and 6656(a), respectively, and thus should not have been assessed penalties under those provisions. The district court found that Fran's failure to pay and deposit its employment taxes was due not to "reasonable cause," but to "willful neglect." For the following reasons, we affirm the judgment of the district court.

## BACKGROUND

The facts are undisputed. Plaintiff–Appellant Fran has been an electrical contractor for commercial new construction and renovation projects since 1983. In 1992, Fran was completing work under two contracts, with the State of New York and with St. Thomas Aquinas College, for large projects. In that year, the State withheld progress and cost overrun payments to Fran ultimately totaling $454,854.93. Despite its refusal to pay, the State insisted that Fran complete its work or risk losing the full contract through breach. Within a year, St. Thomas Aquinas College defaulted on its payments to Fran totaling $157,314.15.

To pay for its continuing work for the State, Fran exhausted its credit facilities and developed a plan to pay its workers fully and certain creditors partially to ensure completion of the two delinquent projects and preservation of the business as a going concern. Fran made partial payments to its employees' union during this period as well. The Government conceded for the purposes of its summary judgment motion below that Fran

did not have sufficient cash flow or assets to pay all of its employees, creditors, and taxes. There is no dispute that Fran faced severe financial difficulties during this period.

As a result of such difficulties, during the five quarters between April 1993, and June 1994, Fran failed to pay approximately one half of its employment taxes, which totaled $286,426.98. These included federal income taxes, social security taxes (FICA), and Medicare taxes which it was required to pay for its workforce.[1] Fran also filed its quarterly tax returns late for the second and fourth quarters of 1993 and the second quarter of 1994. During these five quarters, Fran had revenues of $7,394,256.

On July 17, 1994, New York State officially acknowledged its duty to pay Fran's entire claim of $454,458 for payments due under its contract with Fran and, based on that representation, Fran managed to obtain a $200,000 bank loan to pay its taxes. By October 1995, Fran had paid the entire balance of taxes owed, interest, and penalties for (1) failure to file returns ($6,327.63), imposed pursuant to 26 U.S.C. § 6651(a)(1); (2) failure to pay taxes ($12,768.77), imposed pursuant to 26 U.S.C. § 6651(a)(2); and (3) failure to deposit taxes ($52,654.32), imposed pursuant to 26 U.S.C. § 6656(a).

On January 7, 1997, Fran filed a complaint in the Southern District of New York to recover the $71,750.72 in penalties paid to the Internal Revenue Service ("IRS"). On November 17, 1997, the Government moved for summary judgment. On January 16, 1998, Taxpayer cross-moved for summary judgment. The District Court granted the Government's motion and denied that of Taxpayer in an opinion dated February 27, 1998, and judgment was entered for the Government on March 2, 1998.

## DISCUSSION

We review de novo a district court's decision to grant summary judgment, and use the standard applied by the district court. *See Gerald B. Lefcourt, P.C. v. United*

---

1. Employers are required to withhold these taxes from employees' salaries as they are paid and to pay over the withheld amounts to the IRS by depositing the taxes in a federal depositary at specified intervals each quarter. *See* 26 U.S.C. §§ 3101, 3102(a), 3102(b), 3111, 3402, 3403, 6302.

*States,* 125 F.3d 79, 82 (2d Cir.1997). Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In assessing whether summary judgment was appropriate, "we resolve all ambiguities and draw all reasonable inferences against the moving party." *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

## I. *Reasonable Cause*

The IRS imposes mandatory penalties for failure to file returns, pay taxes, or deposit employment taxes in a government depository unless the taxpayer can demonstrate that such failure was due to "reasonable cause and not. due to willful neglect." 26 U.S.C. §§ 6651(a)(1), (a)(2), 6656(a). Addressing the application of Section 6651(a)(1), the Supreme Court established that the taxpayer bears the "heavy burden of proving both (1) that the failure did not result from 'wilful neglect,' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985); *see also McMahan v. Commissioner,* 114 F.3d 366, 368 (2d Cir.1997).

In *Boyle,* the Court interpreted the phrase "willful neglect" in Section 6651(a)(1) to mean "a conscious, intentional failure or reckless indifference."[2] 469 U.S. at 245, 105 S.Ct. 687. The Court further noted that "Congress obviously intended to make absence of fault a prerequisite to avoidance of" penalties under this standard. *Id.* at 246 n. 4, 105 S.Ct. 687. In other words, "a taxpayer seeking a refund must therefore prove that his failure ... was the result neither of carelessness, reckless indifference, nor intentional failure." *Id.*

The meaning of "reasonable cause" is more controversial, at least in the context of penalties for an employer's failure to pay taxes on behalf of its employees and, in particular, when the taxpayer asserts that financial difficulties should be considered reasonable cause.[3] We note first that "what elements must be present to constitute 'reasonable cause' is a question of law." *Id.* at 249 n. 8, 105 S.Ct. 687. "[W]hether those elements are present in a given case is a question of fact reviewed for clear error." *McMahan,* 114 F.3d at 369. We review for clear error, therefore, the district court's determination that the Taxpayer did not have reasonable cause for its failure to pay and deposit taxes.[4]

The Treasury Regulations interpreting the "reasonable cause" provision of Section 6651 state, in pertinent part, as follows:

> If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he *exercised ordinary business care and prudence* in providing for payment of his tax liability and *was nevertheless either unable to pay the tax or would suffer an undue hardship* (as described in § 1.6161–1(b) of this chapter) if he paid on the due date.

26 C.F.R. § 301.6651–1(c)(1) (emphasis supplied). An "undue hardship" is defined as

**2.** While the analysis in *Boyle* addressed penalties for failure to file a return under Section 6651(a)(1) and not for a failure to pay or deposit taxes under Section 6651(a)(2) or Section 6656, the language concerning the standard is identical in all three provisions. Unless otherwise noted, therefore, we shall inform our analysis of Sections 6651(a)(2) and 6656 with those precedents that address Section 6651(a)(1).

**3.** The IRS has identified certain circumstances, not present here, that are considered to be reasonable cause: (1) unavoidable postal delays; (2) timely filing of a return with the wrong IRS office; (3) death or serious illness of the taxpayer

or a member of his immediate family; (4) the taxpayer's unavoidable absence from the United States; (5) destruction by casualty of taxpayer's records or place of business; and (6) reliance on the erroneous advice of an IRS officer or employee. *See McMahan,* 114 F.3d at 369.

**4.** The Taxpayer conceded at oral argument that it did not have reasonable cause to avoid timely filing its returns and, therefore, does not appeal the district court's judgment as to those penalties imposed pursuant to 26 U.S.C. § 6651(a)(1) in the amount of $6,327.63.

more than an inconvenience to the taxpayer. It must appear that *substantial financial loss,* for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer for making payment on the due date of the amount with respect to which the extension is desired. If a market exists, the sale of property at the current market price is not ordinarily considered as resulting in an undue hardship.

26 C.F.R. § 1.6161–1(b) (emphasis supplied). To assess the evidentiary basis for a finding of reasonable cause,

consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax.

26 C.F.R. § 301.6651–1(c)(1) (emphasis supplied). In this analysis, "lavish or extravagant expenses" or investments in "speculative or illiquid assets" that render a taxpayer's remaining assets insufficient to satisfy its tax obligations point to a failure to exercise ordinary business care and prudence. *Id.*

Finally, Section 301.6651–1(c)(2) of the Regulations provides:

In determining if the taxpayer exercised ordinary business care and prudence in providing for the payment of his tax liability, consideration will be given to the nature of the tax which the taxpayer has failed to pay. Thus, for example, facts and circumstances which, because of the taxpayer's efforts to conserve assets in marketable form, may constitute *reasonable cause for nonpayment of income taxes may not constitute reasonable cause for failure to pay over taxes described in section 7501* that are collected or withheld from any other person.

26 C.F.R. § 301.6651–1(c)(2) (emphasis supplied). Section 7501 governs the *employee* portion of taxes which are collected or with-

held by an employer as salaries are disbursed. In relevant part, Section 7501 establishes that "the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501(a). Accordingly, the taxes an employer withholds from and pays on behalf of its employees are often called "trust fund taxes." *Begier v. Internal Revenue Service,* 496 U.S. 53, 55–56, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

The parties dispute whether financial difficulties such as those faced by Fran can ever constitute "reasonable cause" to avoid the penalties at issue. The Government argued unsuccessfully below, and asserts again on appeal, that we should adopt the reasoning of the Sixth Circuit Court of Appeals in *Brewery, Inc. v. United States,* 33 F.3d 589 (6th Cir.1994), which held that "financial difficulties can never constitute reasonable cause to excuse the penalties for nonpayment of withholding taxes by an employer." *Id.* at 592 (citation omitted). The *Brewery* Court based its adoption of this bright line rule upon both the trust language of Section 7501 of the statute and Section 301.6651–1(c)(2) of the Regulations, which, as quoted above, provides through an example that failure to pay an employer's own income taxes may be easier to justify under the "reasonable cause" standard than a similar failure to pay trust fund taxes. Specifically, the Sixth Circuit interpreted this Regulation to mean that

since the funds not deposited or paid to the IRS in this case were funds held in trust for the United States under 26 U.S.C. § 7501, the facts and circumstances required to establish reasonable cause must be particularly compelling.

*Id.* Given this heightened standard, the Sixth Circuit held that "the use of trust funds for the payment of other creditors cannot, as a matter of law, constitute reasonable cause." *Id.* Among the Circuits, only the Sixth Circuit Court of Appeals appears to have defined the content of the reasonable cause test in the context of a failure to pay trust fund taxes.[5]

---

5. Numerous lower courts have adopted the bright line rule embraced in *Brewery. See, e.g., Bostar Foods, Inc. v. United States,* No. CIV. A.

3:95CV–811–S, 1997 WL 192134, at *2 (W.D.Ky. Feb.10, 1997) (financial difficulties preventing payment of employment taxes "simply not 'rea-

Taxpayer responds, and the district court agreed below, that the application of such a bright line rule when a delay in payment is attributed to financial difficulties would be inconsistent with Congress' creation of· a "reasonable cause" exception and the Treasury Regulations concerning the factual circumstances a taxpayer must allege to benefit from it. In addition, Fran points out that the sections of the statute addressing penalties for late filing, payment, and deposit do not distinguish between trust fund taxes and other taxes. Furthermore, Fran notes that Section 7501 itself, the Section explicitly devoted to trust fund taxes, provides that penalties for its violation shall be imposed pursuant to Sections 6672 and 7702, and *not* Sections 6652 or 6656. The former sections provide for *personal* liability for "willful" failure to collect or truthfully account for taxes (§ 6672) and *criminal* liability for such willful failures (§ 7202). *See also· Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir.1993) (interpreting Section 6672). There is no basis, Fran argues, to import the trust concept and its implications from Section 7501 into a case brought pursuant to the broader penalty provisions.

We believe that the district court properly declined to embrace the bright line rule of *Brewery*. Such a rule finds no support in either the penalty provisions of the statute or in the longstanding Treasury Regulations drafted to implement those provisions. Sections 6652 and 6656 neither bar the consideration of financial difficulties in determining whether reasonable cause has been proven, nor differentiate between trust fund taxes and other taxes which are not kept in trust for the benefit of the IRS. This is particularly significant with respect to Section 6656, which specifically addresses the failure to deposit employment taxes yet requires neither a higher standard in such cases nor that courts turn a blind eye to a taxpayer's financial circumstances. The "reasonable cause"/"wilful neglect" standard has been part of the penalty provisions of the tax statutes since 1916, and Congress has not amended these provisions to create a different standard for the failure to pay trust fund taxes. *See Boyle*, 469 U.S. at 245 n. 3, 105 S.Ct. 687.

■ The Treasury Regulations, moreover, specifically require courts to assess "all the facts and circumstances of the taxpayer's financial situation," 26 C.F.R. § 301.6651–1, and to determine whether the taxpayer would have suffered "undue hardship," *id.*, or "substantial financial loss," 26 C.F.R. § 1.6161–(1)(b), from the payment of taxes. These portions of the Treasury Regulations have remained unchanged since at least 1973, and in the case of Section 1.6161–1, since 1960. Such regulations "long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *Cottage Savings Ass'n v. Commissioner*, 499 U.S. 554, 561, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991) (quotation and citation omitted).[6]

sonable cause' "); *In re Sykes & Sons, Inc.*, 188 B.R. 507, 513 (Bkrtcy.E.D.Pa.1995) ("financial duress alone does not constitute reasonable cause such as to excuse the taxpayer from timely filing, deposit, and payment of trust fund taxes"); *In re Upton Printing Co.*, 186 B.R. 904, 907 (Bkrtcy.E.D.La.1995) (adopting *Brewery*); *C.J. Rogers, Inc. v. United States*, No. 89–70209, 1990 WL 255586, at *2 (E.D.Mich. Sept.17, 1990) (allowing financial difficulties to constitute reasonable cause for failure to deposit employment taxes would "effectively enable failing corporations to self-execute government loans"); *Wolfe v. United States*, 612 F.Supp. 605, 608 (D.Mont. 1985) ("Almost every non-wilful failure to pay [employment and other] taxes is the result of financial difficulties.").

Several lower courts have found "reasonable cause" based on the taxpayer's financial difficulties. *See, e.g., In re Slater Corp.*, 190 B.R. 695,

700–01 (Bkrtcy.S.D:Fla.1995) (construction contractor made partial payments on employment taxes and business expenses); *In re Arthur's Indus. Maintenance, Inc.*, No. 89–01190, 1992 WL 132563 at *6–8 (W.D.Va. Apr. 9, 1992) (construction contractor in bankruptcy made no unreasonable expenditures and made significant partial payments of its employment taxes); *In re Pool & Varga, Inc.*, 60 B.R. 722, 725–28 (Bkrtcy. E.D.Mich.1986) (debtor decreased salary of principal and paid only expenses necessary to avoid closure); *Glenwal–Schmidt v. United States*, Civ. A. No. 77–0902, 1978 WL 4527, at *3 (D.D.C. July 12, 1978) (construction contractor paid only those vendors necessary to complete critical project).

6. Indeed, even if we believed the statutory provisions at issue to be ambiguous, we would be required to defer to the Secretary's quite permis-

These regulations clearly require a factual assessment of the taxpayer's financial situation to determine whether it has exercised ordinary business care and prudence in responding to competing financial obligations.

Nor does the provision upon which the *Brewery* Court relied, 26 C.F.R. § 301.6651–1(c)(2), support a bright line rule. That provision simply requires that we consider, among other factors in our analysis of the taxpayer's care and prudence, "the nature of the tax which the taxpayer has failed to pay," and provides an illustrative example to suggest that

> facts and circumstances which ... *may* constitute reasonable cause for nonpayment of income taxes *may not* constitute reasonable cause for failure to pay over taxes described in section 7501 that are collected or withheld from any other person.

*Id.* (emphasis added). While courts must consider the obligations to pay Section 7501 trust fund taxes in their analysis of reasonable cause, their analysis may not stop there. We recognize that it will be the rare case where the government is made the "unwilling partner in a floundering business," *Brewery*, 33 F.3d at 593 (internal quotation omitted), without the employer incurring the duty to pay a penalty for having made such a choice, but it nonetheless remains for the court in each case to weigh all of the factors identified in the Regulations. To hold otherwise would effectively read out of the statute the "reasonable cause" exception to mandatory penalties in many employment tax cases. The Government provides no basis to ignore the intent of Congress and the Treasury Department and depart from the established practice of case-by-case assessment of reasonable cause and wilful neglect.

## II. *Application of the Law to Taxpayer's Conduct*

■ The district court found that Fran had failed to exercise "ordinary business care and prudence" and that its "failure to file and pay its taxes in a timely fashion was the result of either 'carelessness, reckless indif-

ference, [or] intentional failure.'" *Fran Corp. v. United States*, 998 F.Supp. 296, 300 (S.D.N.Y.1998) (quoting *Boyle*, 469 U.S. at 246 n. 4, 105 S.Ct. 687). Because we agree with the district court that Fran failed to exercise ordinary business care and prudence and thus has not shown reasonable cause, we need not reach whether its failures were instead due to wilful neglect. The district court based its conclusion principally on three expenditures made by Fran during its tax delinquency: (1) the continued payment of $3,500 in monthly rent to the President of Fran ("Hellman") despite an outstanding loan of $148,636.89 made by Fran to Hellman in 1991; (2) auto leasing and repair expenses; and (3) entertainment expenses. The district court's assessment of these expenditures supports its conclusion as to reasonable cause.

In its brief on appeal, counsel for Fran characterizes the 1991 loan to Hellman as an effort to enhance Fran's balance sheet by listing Hellman's annual dividend as a debt owed to Fran. This characterization contradicts the straightforward description of the loan Hellman gave in his affidavit on the motion and must be disregarded. It is undisputed that Fran continued to pay rent to Hellman during the entire period of delinquency despite its tax obligations. Fran argues that the fact that Hellman owned the office space which Fran rents is irrelevant because Fran would have had to pay rent to some entity if not to Hellman. This argument ignores the critical fact that another landlord would not have owed Fran almost $150,000. Clearly, the prudent course would have involved at least a suspension of all payments to Hellman, if not a demand for Hellman's repayment of the loan, until Fran paid its taxes. The decision to give priority to the company's president as creditor over the IRS demonstrates the absence of ordinary business care and prudence.

Similarly, Fran's decision to fund numerous auto leases and repairs before paying the IRS further undermines its argument. These expenses included the repair of a Porsche that even Fran declines to charac-

sible construction of the statute. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* *Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

terize as essential to completing the two construction projects. While some of these expenditures may have legitimately supported those projects, it was not clear error for the district court to conclude that they indicate imprudence in budgeting given Fran's obligations to the IRS under the law. It is also clear that payment to the IRS of the same monies would not have caused "substantial financial loss" to Fran or forced it to default on its construction obligations. 26 C.F.R. § 1.6161–1(b).

Finally, the entertainment expenses cited by the district court demonstrated imprudence in setting the company's financial priorities during the period. The expenditures totaled $11,298.25 for 1993, and $4,914.53 for 1994. Fran argues that its golf and hockey outings constituted business development work. Even if true, however, there is no evidence in the record to link these outings to the two projects which Fran claims it needed to complete to avoid defaulting on its contracts. Similarly, the record reflects that Fran paid for two dinner dances during the same period which it has not linked to the critical projects in any way. While not overwhelming in size, these expenditures support the district court's finding that they were "lavish or extravagant" because the preservation of the business did not require them to be made. 26 C.F.R. § 301.6651–1(c)(1).

Perhaps most important is Fran's failure to provide any evidence to show that it placed its obligations to the IRS before those to any and all creditors not directly related to the two projects that defaulted. Absent such a showing, Fran cannot demonstrate that it acted prudently in disregarding its legal obligations to pay and deposit the employment taxes. It was not clear error for the district court to find that the Taxpayer had not demonstrated that its failure to pay and deposit taxes was due to reasonable cause and not to wilful neglect.

### CONCLUSION

A taxpayer may, under appropriate circumstances, demonstrate that it had reasonable cause for its failure to pay and deposit employment taxes by showing that it exercised ordinary business care and prudence in the face of financial difficulties, yet was either unable to pay the tax or would have suffered undue hardship if it had paid when required. Fran has not shown that it exercised ordinary business care and prudence in addressing its obligations to pay and deposit employment taxes. Accordingly, we affirm the judgment of the district court.