T.C. Memo. 2011-155

UNITED STATES TAX COURT

CUSTOM STAIRS & TRIM, LTD., INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9204-09L.                    Filed July 5, 2011.

        P filed a petition for review pursuant to secs. 6320
and 6330, I.R.C., in response to R's determination that
the lien and levy actions were appropriate.

        <u>Held</u>:  P exercised ordinary business care and
prudence in providing for payment of its tax liability.
R's determination to impose a failure to deposit
penalty and a failure to pay addition to tax and to
proceed with collection actions is reversed.

Rebecca L. Cordes (an officer), for petitioner.

<u>John F. Driscoll</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1]  Petitioner, Custom Stairs & Trim, Ltd., Inc. (Custom Stairs), through its vice president, Rebecca L. Cordes (Ms. Cordes), seeks review of respondent's determination to impose a penalty and an addition to tax and to proceed with a proposed levy and to keep in place a filed lien.

These collection actions stem from a penalty under section 6656 and an addition to tax under section 6651(a)(2) relating to Custom Stairs' unpaid employment taxes reported on Form 941, Employer's Quarterly Federal Tax Return, for the second quarter of 2008.  The IRS imposed the penalties and the additions to tax on Custom Stairs for 15 consecutive quarters beginning in 2005; only one of these quarters is in dispute.  The issue for decision is whether the section 6656(a) failure to deposit penalty of $3,124.79 and the section 6651(a)(2) failure to pay addition to tax of $224.50 should be abated because Custom Stairs' failure to

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

make the deposits was due to reasonable cause.[2]  As a result of the penalties, plus interest and collection costs, less payments made, Custom Stairs' balance due as of April 3, 2010, was $1,575.26.[3]

## FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulations, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed, Custom Stairs had its principal business address in Pensacola, Florida.  During the period at issue in 2008, Ms. Cordes was vice president of Custom Stairs, a company in the business of building circular wooden staircases.  Custom Stairs timely filed Form 941 for the period

---

[2]Respondent's administrative file focuses almost exclusively on the sec. 6656(a) penalty.  The petition indicates in par. 5: "I disagree that there was a neglect or refusal to pay" and "I disagree that I did not establish reasonable cause to abate penalties".  See also Ms. Cordes' Dec. 10, 2008, letter to Susan Shaw, the revenue officer assigned to this case, "requesting reductions of penalties".  Similarly, in the attachment to Form 12153, Request for a Collection Due Process or Equivalent Hearing, under "Lien Withdrawal" item 3 Custom Stairs refers to "penalties".

[3]The balance due, as of Apr. 6, 2010, per respondent's records (Form 4330, Certificate of Assessments, Payments, and Other Specified Matters) was $1,595.26.  This amount was derived by adding the sec. 6656(a) penalty of $3,124.79 and the sec. 6651(a)(2) addition to tax of $244.50, respectively, to assessed interest through Sept. 29, 2008, of $180.97 plus "collection costs" of $45, less Custom Stairs' payment against the charges of $2,000.

ending June 30, 2008, with a reported tax liability of $28,900.40.

Custom Stairs has been in business since December 1985 fabricating stairways for residential properties along the Gulf Coast.  Its troubles began in September 2004 when Hurricane Ivan, the 10th most intense Atlantic hurricane ever recorded,[4] struck the Gulf Coast, severely damaging Custom Stairs' place of business and severely affecting many of its customers.

In 2005 through 2008 as Custom Stairs felt the effects of the hurricane, collapse of the housing bubble, and economic recession, it began laying off employees, eliminating vacations and paid holidays, and cutting employee benefits.  In 2008 Custom Stairs also contacted a real estate broker and listed its office property with the hope of using the proceeds to pay off the company's debts.

Custom Stairs has a history of timely filing its Forms 941 and making deposits of the tax assessed.  However, following the hurricane, it also has a history of failing to pay the full amount and having to pay penalties and interest.  Because of the hurricane, Custom Stairs fell behind with its employment taxes in early 2005 and was thereafter consistently in arrears.  For most

---

[4]This Court takes judicial notice of the severity of Hurricane Ivan.

of these calendar quarters Custom Stairs actually paid over to the Internal Revenue Service (IRS) amounts that would have fully satisfied its liability for the current quarter; but the IRS applied its payments to prior arrearages, leaving all or portions of each successive quarter's required deposits underpaid.[5]  In short, following the hurricane Custom Stairs never asked for, nor did it receive, any penalty relief or a clean penalty-free start until it sought relief in the 2008 quarter at issue here.  Below is a table showing Custom Stairs' history with respect to the Federal tax deposit penalty and failure to pay addition to tax for the quarters ended March 31, 2005 through 2009.

Penalties, Additions to Tax, Interest Assessments, and Payments

| Quarter Ended | Date of Assessment | Federal Tax Deposit Penalty | Failure To Pay Addition | Interest | Payments |
|---|---|---|---|---|---|
| Mar. 31, 2005 | Jun. 27, 2005 | $1,301.01 | --- | --- | $1,301.01 |
| Jun. 30, 2005 | Oct. 10, 2005 | 1,412.09 | $49.68 | $41.15 | 1,502.92 |
| Sep. 30, 2005 | Dec. 26, 2005 | 2,394.06 | 109.58 | 74.10 | 2,577.74 |
| Dec. 31, 2005 | Apr. 03, 2006 | 2,091.85 | --- | --- | 2,091.85 |
| Mar. 31, 2006 | Jun. 26, 2006 | 1,647.09 | --- | --- | 1,647.09 |
| Jun. 30, 2006 | Sep. 18, 2006 | [1]1,989.23 | --- | [2]12.70 | 2,001.92 |
| Sep. 30, 2006 | Jan. 01, 2007 | 1,735.37 | 38.80 | 32.41 | 1,806.58 |

---

[5]Custom Stairs could have entirely avoided liability for additions and/or penalties in all but 5 of the 16 quarters for which they were assessed by allocating differently the tax payments that it made.  With such designations, the payments that Custom Stairs is stipulated to have made would have timely paid its employment taxes for 11 of the 16 delinquent quarters, and Custom Stairs would thereby have avoided the great majority of the $27,000 in penalties and additions that were assessed against it.

| | | | | | |
|---|---|---|---|---|---|
| Dec. 31, 2006 | Apr. 02, 2007 | 1,710.42 | --- | --- | 1,710.42 |
| Mar. 31, 2007 | May 28, 2007 | 324.25 | --- | --- | 324.25 |
| Jun. 30, 2007 | Sep. 03, 2007 | [3]778.97 | 0.40 | 0.30 | 819.67 |
| Sep. 30, 2007 | Dec. 31, 2007 | 1,519.92 | 44.46 | 33.45 | 1,597.83 |
| Dec. 31, 2007 | Apr. 07, 2008 | 1,845.56 | [4]72.57 | [5]56.51 | [6]1,974.64 |
| Mar. 31, 2008 | Jun. 16, 2008 | [7]2,860.65 | 56.84 | [8]38.85 | [9]2,938.10 |
| Jun. 30, 2008 | Sep. 29, 2008 | [10]3,169.79 | 224.50 | 180.97 | 2,000.00 |
| Sep. 30, 2008 | Dec. 15, 2008 | 831.67 | --- | --- | 831.67 |
| Dec. 31, 2008 | None | --- | --- | --- | --- |
| Mar. 31, 2009 | May 25, 2009 | 605.03 | --- | [11]2.32 | 607.35 |
| Total | | 26,216.96 | 596.83 | 472.76 | 25,733.04 |
| Net total assessed | | 27,286.55 | | | |
| Less payments | | 25,733.02 | | | |
| Amount remaining | | [12]1,553.51 | | | |

[1] A statutory notice of intent to levy was issued on Oct. 23, 2006.

[2] This interest was assessed on Nov. 20, 2006.

[3] An additional $2 was assessed on Oct. 8, 2007, but was "cleared" after payment was received. Resolution of the apparent $38 overpayment is not explained in the record.

[4] Of the $92.19 failure to pay addition to tax originally assessed, $19.62 as well as $5.25 of the $64.03 originally assessed interest was abated on Apr. 14, 2008.

[5] An additional $2.27 of interest was abated and refunded on May 26, 2008.

[6] After the $2.27 of interest abated and refunded on May 26, 2008.

[7] An additional $110.17 Federal tax deposit penalty was assessed on July 21, 2008, which was abated on July 21, 2008, after payment was received. A statutory notice of intent to levy was issued on Sept. 1, 2008.

[8] An additional $18.14 of interest was assessed on July 21, 2008, and abated on Oct. 6, 2008.

[9] After $18.24 was refunded.

[10] $2,729.64 was initially assessed on Sept. 29, 2008, and an additional $395.15 Federal tax deposit penalty was assessed on Nov. 3, 2008. This also includes $45 of collection costs charged to Custom Stairs. An intent to levy collection due process notice levy notice was issued on Nov. 20, 2008.

[11] This $2.32 was assessed on Aug. 31, 2009. A statutory notice of intent to levy was issued on June 29, 2009.

[12] The apparent $21.75 discrepancy is not explained in the record.

For the tax period ended June 30, 2008, Custom Stairs was required to make employment tax deposits on April 9, April 16, April 23, April 30, May 7, May 14, May 21, May 28, June 4, June 11, June 18, and June 25. During this period the IRS

treated no payments of Custom Stairs as tax deposits for the quarter ended June 30, 2008; the first payment that the IRS treated as a deposit for this quarter was received by respondent on July 3, 2008. By the time Custom Stairs timely filed Form 941 for the tax period ended June 30, 2008, Custom Stairs had made $7,113.94 of payments that the IRS treated as deposits on the $28,900.40 due. As reflected in the preceding table, on September 29, 2008, a $2,729.64 penalty under section 6656, Failure to Make Deposit of Taxes, was assessed against Custom Stairs for the second quarter of 2008, at issue, and an additional $395.15 was assessed on November 3, 2008.

However, Custom Stairs had in fact made payments totaling $29,481.65--i.e., more than the liability for the quarter ended June 30, 2008--before the due date for the Form 941. Custom Stairs had not designated them for that current quarter, however, and the IRS allocated them instead to the prior March 31, 2008, quarter, which was in arrears and for which penalties had already been assessed. Because of Custom Stairs' nonallocation and timing of its payments within the June 30, 2008, quarter, penalties and additions were eventually assessed against it for both those quarters.

On July 30, 2008, an internal revenue officer, whose pseudonym is Susan Shaw (Officer Shaw), visited Custom Stairs after she was notified that there had been a substantial drop in

its Form 941 Federal tax deposit levels. She explained that the main purpose is "to try to get early intervention with businesses that are falling behind in their payroll tax deposits." Officer Shaw met with Ms. Cordes and explained that the most important thing was for Custom Stairs to get and stay current. She directed that Custom Stairs pay current taxes first. Ms. Cordes explained to Officer Shaw that the hurricane and economic downturn had severely affected their construction-based business.

Officer Shaw left a handwritten Form 9297, Summary of Taxpayer Contact, which, under the heading "Information/Documents required", stated: "Provide current profit & loss", "accounts receivable listing", "balance sheet/asset listing", "bank statements & canceled checks 4/1/2008-7/1/2008", "copy of the bank signature card", "copy of 1120 for 2007", and "provide personal financial statements". Officer Shaw explained that these documents were needed so that respondent could compile a collection plan, determine whether the finances would support an installment agreement, or determine whether respondent could direct Custom Stairs to get a loan to pay the full amount.

On August 1, 2008, Ms. Cordes called Officer Shaw and explained that she believed that Custom Stairs would be able to pay all past due tax liabilities within 8 weeks. Officer Shaw agreed to the proposal and apparently suspended any additional investigation and financial review until October 1, 2008. On

September 29, 2008, Officer Shaw noted that Custom Stairs had met its current tax liabilities and that it had made about $15,000 in deposits against past due amounts over the past 8 weeks. She noted that the balance "due [approximately $16,000] will be resolved in a short time" but if the past due amounts were not paid in full by October 31, 2008, she would have to secure the bank records and documentation requested at the initial meeting. Officer Shaw communicated the new deadline to Custom Stairs and stated that if the remaining liabilities were not paid, Custom Stairs would have to provide the records requested or a lien would be filed and a levy might be initiated. Officer Shaw also noted that "TP [taxpayer] appears to be making swift progress, in a construction/real estate related business, during a very poor economic time."

On October 30, 2008, Officer Shaw noted that Custom Stairs was up to date on current liabilities and had a balance of $11,434 on past due liabilities. She noted that Custom Stairs was "not pyramiding" and that they appeared "to be earnestly resolving delinquency, despite this being a construction related business, during a very poor economic cycle for home construction." Officer Shaw decided to delay following up with Ms. Cordes until November 17, 2008, and communicated that extension to Ms. Cordes. A liability remained on November 20, 2008; and because Custom Stairs had failed to make the deposits

it promised and bring itself current by that date, a lien was filed.

On November 20, 2008, Custom Stairs was sent a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (CDP levy notice), showing $9,919.27 still owed for the quarter ended June 30, 2008.  On December 2, 2008, Custom Stairs was mailed a Notice of Federal Tax Lien Filing and Your Right to a Hearing.  Custom Stairs, on December 11, 2008, timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing.  Under the heading "Offer in Compromise" Custom Stairs requested a "reduced penalty, under the present economic conditions"; and under the heading "Lien Withdrawal" Custom Stairs stated that the lien was filed prematurely because Custom Stairs had been keeping current while slowly making up the past due liabilities.  It also stated that as of December 4, 2008, all of the past due amounts (except penalties) had been paid.

By letter dated February 18, 2009, Peter Salinger, the settlement officer of the Tampa Appeals Office (Settlement Officer Salinger) assigned to the case, informed Custom Stairs that a telephone conference was scheduled for March 18, 2009. Ms. Cordes responded to the letter on March 2, 2009, explaining that she believed that the lien was unreasonable.  She again explained that because the underlying taxes had been paid and the

only balance for that period was a penalty that she claimed should be abated for reasonable cause, the lien was unnecessary.

During the telephone hearing conducted on March 18, 2009, Ms. Cordes explained to Settlement Officer Salinger that she did not feel that she had to submit the requested documentation because she had been making payments on the delinquent tax liability. Settlement Officer Salinger explained that under his analysis Custom Stairs did not have reasonable cause for the abatement of the penalty. Custom Stairs did not submit any of the documentation requested, and no collection alternatives were offered. When Settlement Officer Salinger asked Ms. Cordes how she wished to resolve the liability, she informed him that she did not know because she did not have the money to pay it.

On March 26, 2009, Appeals Team Manager, Clifford Whitely, mailed Custom Stairs a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (determination letter). The letter explained that "the Notice of Intent to Levy should not be withdrawn" and "the Notice of Federal Tax Lien will not be withdrawn". It stated that the lien was reasonable under the circumstances and that all of the legal and procedural requirements had been met. Custom Stairs timely filed a petition with this Court on April 16, 2009, for review of the Appeals Office's actions and the determination letter. Custom Stairs claimed that because it could not pay the tax

liability there was reasonable cause for the failure to pay and therefore the penalties should be abated. Custom Stairs concluded that since the penalty was improper, there was no underlying tax liability to warrant a lien against its property and thus the lien was unnecessary and unreasonable.

On February 5, 2010, respondent filed a motion for summary judgment, and on March 10, 2010, Custom Stairs timely filed a response. By order dated April 13, 2010, this Court denied respondent's motion. It did so because it determined that "Whether petitioner's failure to pay taxes was due to reasonable cause is a material issue of fact". Summary judgment is appropriate only where "the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). A trial was held on May 24, 2010, in Mobile, Alabama.

## OPINION

Section 6320(a) and (b) provides that a taxpayer shall be notified in writing by the Commissioner of the filing of a notice of Federal tax lien and provided with an opportunity for an administrative hearing. An administrative hearing under section 6320 is conducted in accordance with the procedural requirements of section 6330. Sec. 6320(c).

Section 6331(a) authorizes the Commissioner to levy upon property or property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after a notice and demand for payment is made. Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to unpaid tax liability only if the Commissioner has given written notice to the taxpayer 30 days before the levy. Section 6330(a) requires the Commissioner to send a written notice to the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a section 6330 hearing at least 30 days before the levy is begun.

If an administrative hearing is requested in a lien or levy case, the hearing is to be conducted by the Appeals Office. Secs. 6320(b)(1), 6330(b)(1). At the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The taxpayer may raise any relevant issue with regard to the Commissioner's intended collection activities, including spousal defenses, challenges to the appropriateness of the proposed levy, and alternative means of collection. Sec. 6330(c)(2)(A); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). Taxpayers are expected to provide all relevant information requested by Appeals, including financial statements, for its

consideration of the facts and issues involved in the hearing. Secs. 301.6320-1(e)(1), 301.6330-1(e)(1), Proced. & Admin. Regs.

If a taxpayer's underlying liability is properly at issue, the Court reviews any determination regarding the underlying liability de novo.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182.  We review any other administrative determination regarding the proposed collection action for abuse of discretion.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182.

If raised at a hearing by the taxpayer, a taxpayer's underlying liability is properly at issue if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).  A taxpayer generally is treated as not having had an opportunity to dispute a liability that is self-reported as due on a return.  Montgomery v. Commissioner, 122 T.C. 1, 9 (2004).  Custom Stairs did not receive a notice of deficiency.  Respondent has not shown, indicated, or alleged that Custom Stairs had an opportunity to dispute the tax liability, and the penalty was related to a liability that was self-reported as due on the return. Consequently, the underlying liability is properly at issue.  See sec. 6330(c)(2)(B).

Under section 6656(a) if a taxpayer fails to make a required deposit on the date prescribed for that deposit, a penalty equal to the applicable percentage of the amount of the underpayment, determined pursuant to section 6656(b), shall be imposed. Section 6656(a) also provides that the penalty shall not be imposed if "it is shown that such failure is due to reasonable cause and not due to willful neglect". Likewise section 6651(a)(2) imposes an addition to tax of 0.5 percent per month up to an aggregate total maximum of 25 percent for failure to timely pay tax. This addition to tax is also not to be applied if the failure to pay was due to reasonable cause and not willful neglect.

Caselaw and legislative history indicate that the primary purpose of these penalties is to ensure compliance. United States v. Boyle, 469 U.S. 241, 245 (1985); H. Rept. 101-247, at 1403 (1989). The Commissioner's policy statement explains that the "Penalties are used to enhance voluntary compliance. * * * Penalties provide the Service with an important tool * * * because they enhance voluntary compliance by taxpayers." Internal Revenue Manual (IRM) Exhibit 20.1.1-1, Penalty Policy Statement 20-1 (Dec. 11, 2009).

It is uncontested that Custom Stairs failed to make the required 2008 second quarter deposit payments by the dates they

were due.  We must decide whether that failure was due to reasonable cause and not willful neglect.

Custom Stairs during the years 2005 through June 2008 was consistently in arrears, so that the numerous undesignated payments it made were frequently applied to pay past due liabilities.  Final payments satisfying the total tax amounts due under the returns as filed were made shortly after the lien was filed, leaving unpaid only a portion of the 2008 second quarter penalties that had been assessed.

Custom Stairs asserts that it had not fully recovered from the damage caused in 2004 by Hurricane Ivan when it began to feel the effects of the economic recession in 2008.  Custom Stairs responded by laying off employees, eliminating vacations and paid holidays, and curtailing employee benefits.  It even unsuccessfully attempted to sell the real property in which it conducted its business, in an effort to remain current with its taxes and pay off its debts.

Custom Stairs did not make the Federal tax deposits because there was "not enough to pay the taxes" and meet its other crucial operating expenses.  Mrs. Cordes explained that "I have made conscious decisions to pay perhaps a vendor * * * but when I've made a decision to not pay a tax payment on time versus a vendor, it was simply to continue to stay in business."  Custom Stairs claims that its inability to timely pay the taxes on

account of the lingering effects of Hurricane Ivan and the economic recession, in the context of this case, constitutes reasonable cause.

Respondent asserts that the mere inability to pay, coupled with the payment of other creditors rather than the Treasury, is never reasonable cause for abatement of the failure to deposit penalty.  However, a majority of the Courts of Appeals that have decided this issue have determined "that financial hardship can, under certain circumstances, justify failure to pay and deposit employment taxes".  Diamond Plating Co. v. United States, 390 F.3d 1035, 1038 (7th Cir. 2004) (citing Van Camp & Bennion v. United States, 251 F.3d 862, 868 (9th Cir. 2001), East Wind Indus., Inc. v. United States, 196 F.3d 499, 507-508 (3d Cir. 1999), and Fran Corp. v. United States, 164 F.3d 814, 819 (2d Cir. 1999)).  But see Brewery, Inc. v. United States, 33 F.3d 589, 592 (6th Cir. 1994).  IRM Exhibit 20.1.1-3 specifically states, under the table heading "General Penalty Relief", that inability to pay is "Rarely Allowed on Employment Tax Deposits", implying that in certain rare circumstances, it is allowed.

Respondent notes that this is not a first-time offense and that Custom Stairs has been continually delinquent in making employment tax deposits as reflected in the table supra.[6]  In

_____

[6]But see supra note 5, explaining that, had Custom Stairs designated its payments differently, it would have been

(continued...)

respondent's opinion, these facts negate any reasonable cause defense. Regulations promulgated under section 6656 do not address "reasonable cause" except as to first-time depositors. See sec. 301.6656-1, Proced. & Admin. Regs. We will therefore look to the analogous late-payment additions to tax under section 6651(a)(2) although we recognize it is not a "penalty" provision per se.[7]

Reasonable cause will be found if the taxpayer "exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. In determining whether the taxpayer exercised ordinary business care and prudence, "consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income". Id. The primary factors in determining whether a taxpayer exercised

---

[6](...continued)
delinquent in only 5 of the 16 quarters.

[7]We have found the sec. 6656 penalty and attendant reasonable cause exception similar to the sec. 6651(a)(2) addition to tax before, even referring to sec. 6656 as an addition to tax. See Charlotte's Office Boutique, Inc. v. Commissioner, 121 T.C. 89, 109 (2003), supplemented by T.C. Memo. 2004-43, affd. 425 F.3d 1203 (9th Cir. 2005). We also note that the definition of "employment tax" does not exclude penalties. See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 268 (2001).

ordinary business care cited by the Courts of Appeals that allow a reasonable cause defense for the inability to make employment tax deposits are: (1) The taxpayer's favoring other creditors over the Government, (2) a history of failing to make deposits, (3) the taxpayer's financial decisions, and (4) the taxpayer's willingness to decrease expenses and personnel. Staff It, Inc. v. United States, 482 F.3d 792 (5th Cir. 2007); Diamond Plating Co. v. United States, supra at 1038; Van Camp & Bennion v. United States, supra at 868; East Wind Indus., Inc. v. United States, supra at 508-509; Fran Corp. v. United States, supra at 819-820.

We begin by recognizing that Custom Stairs has, with great effort and tenacity, eventually paid off all of the liability shown on the June 2008 quarterly Form 941 tax return. Nevertheless, Trust Fund Business Master File tax payments are a particularly sensitive item for the Commissioner. The Government depends on the employer, as its agent and fiduciary, to timely collect and timely pay over these taxes from third-party employees and to make certain matching payments itself. The Government must give the employees credit for the withheld amounts even when they are withheld and not paid over.

Penalties therefore serve an important deterrence function, and the taxpayer bears a heavy burden when seeking to avoid a failure to pay or deposit penalty. That said, here the deterrent goal has been served with over $27,286.55 of penalties assessed

and $25,733.04 collected.  Moreover, it cannot be said that, during the time relevant to its liabilities for the quarter ended June 30, 2008, Custom Stairs held onto the taxes it had withheld from its employees rather than paying them over.  On the contrary, during the period for making deposits of those taxes, Custom Stairs paid over to the IRS amounts greater than the employment taxes it owed for that period (including trust funds).  Only because there were arrearages from prior quarters--for which Custom Stairs has fully paid penalties that are not in dispute-- did the IRS characterize the payments made by Custom Stairs as pertaining to a prior quarter.

In applying the four factors discussed above and other facts particular to Custom Stairs, we find that Custom Stairs' failure to make the deposits, in the context of the cascading penalties encountered here, was due in significant part to Hurricane Ivan, the 2008 economic collapse, and the practical fact of the cascading penalties themselves.  Quarter after quarter current funds were used to pay then-assessed penalties for the prior quarter at the cost of not making all timely deposits for the current quarter.  Given the unique and compelling facts present here, we conclude the failure to timely deposit and pay was due to reasonable cause.

Custom Stairs has favored other creditors over the Government and has a record of 15 consecutive quarterly instances

since 2005 where a penalty was assessed for failure to timely make required deposits. Despite these facts, we find that Custom Stairs has exercised ordinary business care in its financial decisions and its willingness to decrease expenses and personnel in order to pay tax, interest, and penalties. Custom Stairs failed to allocate to its own advantage the payments that it made, and the IRS cannot be criticized for making its own allocation to prior quarters; but during the relevant time period, Custom Stairs' lapse was its failure to have paid in prior quarters and its failure to allocate, not any current failure to pay over to the IRS the tax it had withheld from its employees.

Respondent essentially argues that if Custom Stairs cannot afford to make its tax payment timely it should go out of business. However, "Both the economy and the federal fisc are negatively impacted by such an approach--the amount of money flowing into the economy and the fisc is reduced as a result of increased unemployment, idle buildings and plants, and decreased sales of goods and services." East Wind Indus., Inc. v. United States, supra at 509. Custom Stairs paid to the IRS the money withheld from its employees, and the IRS allocated those payments toward previous liabilities and penalties. Surprisingly, at substantial sacrifice by its owners who provided personal funds, even credit card charges, it has managed to stay in business. As

to every other quarter it has both made the required late deposits and paid the resulting penalties and interest in full. The details of Custom Stairs' efforts are elaborated on by Ms. Cordes' March 2, 2009, letter to Mr. Salinger and the National Taxpayer Advocate's memorandum attached to Custom Stairs' Appeals Office correspondence.

Even respondent's Officer Shaw noted that Custom Stairs "appears to be making swift progress, in a construction/real estate related business, during a very poor economic time." Custom Stairs was providing for the payment of its taxes and making swift progress on its past due taxes during a bad economy. One month later Officer Shaw noted that Custom Stairs was "not pyramiding" by staying current with new tax liabilities and that it appeared "to be earnestly resolving delinquency, despite this being a construction related business, during a very poor economic cycle for home construction." Officer Shaw had informed Custom Stairs that its primary goal was to stay current while making up the delinquent payments, and it had done just that.

Custom Stairs has exercised ordinary business care and prudence in cutting benefits and payroll, selectively and prudently paying business expenses, and attempting to sell its real property to provide for the timely payment of its tax liability. Therefore we find that the reasonable cause necessary to negate, in accordance with their terms, the application of the

section 6651(a)(2) addition to tax and the section 6656 penalty is present in this instance.

The Court has considered all of respondents' contentions, arguments, requests, and statements. To the extent not discussed herein, the Court concludes that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.[8]

---

[8]We note that because we have found that the penalties must be abated, petitioner may be entitled to a refund. However, this Court does not have jurisdiction under sec. 6330 to order a refund. <u>Greene-Thapedi v. Commissioner</u>, 126 T.C. 1, 21 (2006).